UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


Trustees of the LABORERS PENSION
TRUST FUND – DETROIT & VICINITY;
LABORERS VACATION & HOLIDAY
TRUST FUND – DETROIT & VICINITY;
LABORERS METROPOLITAN
DETROIT HEALTH & WELFARE FUND;
LABORERS ANNUITY FUND – DETROIT
& VICINITY; and the MICHIGAN LABORERS
TRAINING FUND, trust funds established
under, and administered pursuant to,
federal law,

            Case No. 2:14-cv-11122

     Plaintiffs,    HON. GEORGE CARAM STEEH

v.

KIRCO MANIX CONSTRUCTION, LLC,

     Defendant.

_____/

## ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PURSUANT TO FED. R. CIV. P.12(b)(6) (DOC. # 9)

### INTRODUCTION

  This is a case in which trustees for union trust funds are seeking damages

representing fringe benefit contributions by Defendant Kirco Manix Construction LLC

("Kirco"), a Michigan construction company, on behalf of its subcontractors on certain

construction projects.  Kirco has moved to dismiss for failure to state a claim pursuant to

Fed. R. Civ. P. 12(b)(6), asserting it is not obligated to make such payment under the

Collective Bargaining Agreement (CBA).  Because the court finds the CBA is not

ambiguous and does not require Kirco to make the payments sought here, the motion is

granted as set forth below.

-1-

BACKGROUND

Plaintiffs are trustees for various fringe benefit funds affiliated with the Laborers' International Union of North America, AFL-CIO, Local Union No. 334. Kirco is a Michigan building and construction limited liability company that served as a general contractor on a number of construction projects between October 2009 and March 2013.  Kirco signed the CBA negotiated by the Construction Association of Michigan, an employer association of which Defendant is a member. That CBA obligated defendant to make periodic fringe benefit contributions for its covered employees.  See Doc. 9, Exhibit B. Plaintiffs have filed a complaint pursuant to § 302 of the Labor-Management Relations Act of 1947, 29 U.S.C.A. § 186, and the Employee Retirement Income Security Act of 1974, 29 U.S.C.A. § 1001, alleging that Kirco breached the CBA by failing to require its subcontractors to adhere to the terms and conditions of the CBA.

Plaintiffs contend that an audit of defendant's books for the period of October 2009 through March 2013 ("Audit") (see Doc. 5, Exhibit B) revealed that contributions in the amount of $1,664,194.04 were owing and unpaid under the terms of its CBA. Accordingly, Plaintiffs ask this court to (a) find that Defendant was obligated to enter into subcontracts with subcontractors who adhered to the terms and conditions of the CBA, (b) find that Defendant's failure to enter into such subcontracts represented a breach of the CBA provisions, (c) order Defendant to provide all books and records to Plaintiffs for inspection to determine the exact amount they owe, (d) award Plaintiffs $1,664,194.04 plus whatever is owed from March 2013, attorneys' fees, costs, and interest, representing the total of unpaid fringe benefit contributions; and (e) award Plaintiffs any and all other relief to which they may be entitled.

-2-

Defendant Kirco filed its initial motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim in April 2014 (Doc. # 5). Plaintiff then filed an amended complaint (Doc. 8), and Defendant responded with another motion to dismiss on May 21, 2014 (Doc. 9).[1]  Defendant claims in its motion that under the CBA, it is only responsible for payments on behalf of its own employees. Because all but one of the parties included in the audit were subcontractors, defendant argues that it has not violated the terms of the CBA, and that plaintiffs have failed to state a claim.

The parties highlight several provisions of the CBA containing language related to the issues in this case:

1.  "It is agreed that when the Employer subcontracts work that is covered by the terms of this Agreement and to be performed on the job site, the subcontractor shall adhere to all the terms and conditions of this Agreement." Article I, § 2.

2.  "A regular employee shall be defined as one who has been on the payroll of said employer within the immediate past nine (9) months." Article IV, § 1(b).

3.  "All fringe benefit contributions provided for in this Agreement shall be made on all employees (i.e., regular, probationary, temporary, seasonal or casual) covered by this Agreement to the various trust funds referred to in Articles X, XI, XII, XIII and XXVIII." Article XIV, § 4.

(Doc. 9, Exhibit B) The parties dispute the application of each of these provisions to their respective rights and duties. The court's discussion of the parties' arguments and authorities is set forth below.

---

[1] The court hereby dismisses the first motion (Doc. # 5).

## STANDARD

A plaintiff only needs to provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The statement should "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964 (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 102). To survive a motion to dismiss for failure to state a claim upon which relief may be granted, the factual allegations must state a claim that is "plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 1949 (2009); *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 538 (6th Cir. 2012). The allegations must be "enough to raise a right to relief above the speculative level" and must move the plaintiff's claim "across the line from conceivable to plausible." *Twombly*, 550 U.S. at 545, 547, 127 S.Ct. at 1959, 1960. In making this determination, the court must take all of the allegations outlined in the complaint to be true and "construe the complaint in the light most favorable to the plaintiff." *In re DeLorean Motor Co.*, 991 F.2d 1236, 1240 (6th Cir. 1993); *see also Handy-Clay*, 695 F.3d at 538.

## ANALYSIS

In this matter, the audit demonstrated that Kirco itself had only one employee on its payroll whose work was subject to contributions to the fringe benefit funds.  This is not disputed by the parties, and Kirco does not appear to contest its liability for contributions on behalf of that employee.

Concerning Kirco's subcontractors, Kirco points to unambiguous language in the CBA requiring it to pay fringe benefit contributions only for its employees. Kirco

-4-

highlights that only one of its employees was listed in the audit, for whom it owed

$125.53. The other seven parties listed are its subcontractors—corporate entities hired

to work on Kirco projects. Kirco argues that subcontractors do not qualify as employees

under the CBA based on the plain meaning of the relevant provisions. Kirco argues that

because nothing in the CBA prohibits the use of subcontractors who would otherwise

fall under its scope and nothing in the CBA requires Kirco to contribute for

subcontractors or to secure the subcontractors' compliance with the CBA, plaintiff has

failed to state a claim.

Plaintiffs, on the other hand, rely on the "Scope of Work" provision providing "that

when the Employer subcontracts work that is covered by the terms of this Agreement

and to be performed on the job site, the subcontractor shall adhere to all the terms and

conditions of this [CBA]."  Plaintiffs argue that this language is a "work preservation"

clause, which permits subcontracting but only under certain conditions.  Plaintiffs assert

that this particular clause does not *guarantee* payment of benefits by defendant, but

requires that defendant secure the compliance of its subcontractors to the CBA.

Moreover, plaintiffs contend that the language requires defendant to ensure that this

compliance continues throughout the term of the subcontract. They allege that

defendant violated the CBA by failing to fulfill this responsibility, and that defendant's

liability for this breach of contract is equivalent to the unpaid fringe benefits.

In response to this argument, defendant argues that:

> the quoted Scope of Work clause provides that the work performed by
> subcontractors falls under the subcontractors' scope of work rather than
> Kirco's.  In other words, when Kirco subcontracts work, Kirco is not
> responsible for complying with the Agreement's requirements with respect
> to the subcontracted work.  This delimitation of Kirco's obligation to

-5-

comply with the terms and conditions of the Agreement means Kirco doesn't have to give subcontractor's employees vacation time, doesn't have to remit union dues for them, doesn't have to ensure that the ratio of Apprentices to Journeymen does not exceed 25%, does not have to have a Steward, doesn't have to pay them union scale wages or fringes, etc.

Defendant's Reply Brf. at 3.  In sum, defendant argues that the scope of work provision "does not obligate it to make contributions to Plaintiffs for work performed by subcontractors."  Id.

Defendant's argument, although somewhat broad, is persuasive.  The court agrees that defendant certainly had no obligation imposed by the CBA to oversee *another* business's personnel practices or labor relations.  In fact, the CBA contains no explicit language concerning defendant's obligation to hire any category of subcontractor whatsoever.  Furthermore, the CBA contains no language concerning any obligation of the defendant to make the third party fringe benefit contributions to plaintiffs on behalf of its subcontractors.  In fact, the court notes that Article II, paragraph 9 states that "[u]pon request of the Union, the Employer agrees to furnish the names of his subcontractors who employ Laborers."  It appears to the court that this provision clearly contemplates that the parties anticipated that the Employer would contract with non-union subcontractors.  This provision would be rendered nonsensical if the provision addressing subcontracting, set forth above, were interpreted to require all subcontractors to be signatories to the CBA.

The authorities offered by plaintiff in opposing the motion are largely distinguishable.  The court notes that plaintiffs have offered neither authority nor evidence to demonstrate that the language they rely on in this CBA has ever been interpreted to mean an employer could not secure the services of non-union

-6-

subcontractors.  This is despite plaintiff's argument at the motion hearing that the same language has been used commonly "for decades."  The case of *Tackett v. M & G Polymers*, USA, 561 F.3d 478 (6th Cir. 2009), cited by plaintiffs at oral argument, stands for the principle that interpretation of a CBA begins with the explicit language.  *Tackett*, 561 F.3d at 489 (citing *UAW v. Yard-Man*, 716 F.3d 1476, 1479 (6th Cir. 1983)).  This is also where the interpretation ends where the language is clear.  *Id*.

Here, the agreement is simply not ambiguous.  There is no provision requiring defendant to enter into subcontracts with union members, and no provision concerning Kirco's secondary liability, either of which would have been a simple and common provision to include.  The language relied on by plaintiffs themselves states that where Kirco subcontracts work covered by the CBA, the *subcontractor* "shall adhere" to the terms and conditions of the CBA.  This does not impose an affirmative obligation on Kirco to monitor its subcontractors.  Moreover, this provision is in concert with the provision requiring Kirco to give the trustees, upon request, a list of its subcontractors employing Laborers.  This allows the trustees to pursue fringe benefits from those subcontractors chosen by Kirco who, under terms of their own CBAs, owe such contributions.

Under the circumstances present here, it is not necessary to consider extrinsic evidence as requested by plaintiffs.  *See Yard-Man*, 716 F.2d at 1479-80, *Moore v. Menasha Corp*., 690 F.3d 444, 451 (6th Cir. 2012).  It is the court's determination that plaintiffs have not offered an opposing, plausible interpretation of the contract terms in dispute. For these reasons, the court finds that defendant is entitled to dismissal of the amended complaint.

<u>MOTION TO AMEND</u>

Plaintiffs have also requested leave to amend the First Amended Complaint, indicating in their response that this request would be "formalized in a separate motion." Given the court's determination on the motion to dismiss, this request will be denied as moot.

<u>CONCLUSION</u>

As set forth above, defendant's motion to dismiss is hereby **GRANTED**, and plaintiffs' motion for leave to file a second amended complaint is **DENIED AS MOOT**.

**IT IS SO ORDERED**.

Dated:  August 15, 2014

s/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on
August 15, 2014, by electronic and/or ordinary mail.

s/Marcia Beauchemin
Deputy Clerk

---

-8-